UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In the Matter of the Application of

DENVER NICOLE COOPER,

                    Plaintiff,

for Judgment pursuant to Art. 78,
CPLR,
       -against-

UNIVERSITY OF ROCHESTER AND
UNIVERSITY OF ROCHESTER MEDICAL
CENTER,

                 Defendants,
-------------------------------------------------------------X

**COMPLAINT**

**25 cv**

       The Plaintiff, DENVER NICOLE COOPER by her attorneys STEWART LEE KARLIN

LAW GROUP, P.C., respectfully shows to this Court and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil action based upon Defendant's violations of the Americans with Disabilities Act, 42 U.S.C. § 12182 and Section 504, 29 U.S.C. 794 by discriminating against Plaintiff due to her disability and perceived disability. Plaintiff is seeking damages for violating her civil rights. Plaintiff is also asserting claims under state law.

2. Plaintiff commenced this instant proceeding pursuant to the ADA and 504 challenging Defendant's decision to dismiss Plaintiff from the medical school via a Final Appeal Decision, dated December 13, 2024, when Plaintiff was forced to resign or would have been dismissed. Defendant alleged that Plaintiff was not making adequate academic

1

progress through the curriculum and had two failed attempts to pass the United States Medical Licensing Examination- Step 1 ("USMLE") and other long-standing concerns including academic difficulties in Phase 1" as grounds for my dismissal. The Defendants failed to take in consideration that it took significant time to receive the necessary accommodations from USMLE and had initially struggled due to her undiagnosed condition in her first year but upon her diagnosis. Plaintiff successfully remediated and thereafter was academically satisfactory.  In addition, the school failed to follow its policies and procedures as set forth below.

### PARTIES

3. Plaintiff DENVER NICOLE COOPER (hereinafter at all times mentioned "Plaintiff" or "Ms. Cooper") was and is a resident of the State of New York.

4. The Plaintiff has a disability and perceived disability that impacted major life activities within the meaning of the ADA, and Section 504 and participated in protected activity pursuant to the discrimination laws.

5. Plaintiff had an impairment that substantially limits one or more major life activities, had a record of such an impairment and was regarded as having such an impairment.

6. Plaintiff was discriminated against due to her disability, and perceived disability and retaliation for complaining about discrimination.

7. Defendant the University Of Rochester and the University Of Rochester Medical Center (hereinafter "URMC") is upon information and belief a non-for-profit corporation existing by virtue of laws of the State of New York with its principal place of business in Monroe

County. Upon information and belief, URMC is a recipient of federal funds. URMC is a

statutory Defendant as defined by the ADA and Section 504.

## JURISDICTION

8. The Court has jurisdiction over Defendant Columbia pursuant to 42 U.S.C. § 12117 and

   28 U.S.C. 1331. In addition, Plaintiff invokes the supplemental jurisdiction regarding the

   state law claims pursuant to 28 U.S.C. 1367.

9. Venue lies in this District pursuant to 28 U.S.C. 1391 (b) (2) as a substantial part of the

   events giving rise to the claim arose within this District.

## FACTUAL STATEMENT

10. Ms. Cooper was accepted into the medical program in August 2021.

11. In Ms. Cooper's first year at URMC, she struggled with undiagnosed learning disabilities.

12. However, Plaintiff was diagnosed with ADHD and dyslexia at the end of her first year.

13. The struggles caused by Plaintiff undiagnosed disability resulted in being placed on

    Advisory Status and remediating certain Phase 1 courses. The Medical Student Promotions

    and Review Board (MSPB) met on May 2, 2022, to review Ms. Cooper's Phase 1 academic

    performance due to concerns given her current Pass Marginal grades in a few of her courses

    as per medical school policy, students who have more than two pass marginals over the

    course of their academic year must be discussed to evaluate if repeating the academic year

    is in their best professional interest. Ms.Cooper was requested to attend a meeting with

    MSPRB and to prepare a statement discussing her recent performance, her academic year's

    accomplishments and her plans to remediate your academic deficiencies. -

3

14. On June 6th, 2022, after reviewing Ms.Cooper's statement the Rochester School of Medicine and Dentistry's Medical Student Promotions and Review Board (MSPRB) supported Ms. Cooper's progress to second year of medical school experience without repeating Phase 1 if there is successful remediation of all classes in which she currently had a Pass Marginal grade. MSPRB noted that the committee was impressed with her reflection and analysis of her difficulties in Phase 1, and that she has all the native talents to be successful as a medical student and future physician.

15. With new learning support, the Plaintiff successfully remediated those courses, progressed to and passed Phase 2 courses, and was removed from Advisory Status in 2022.

16. As a student with disabilities, Plaintiff applied for accommodations at the school. Plaintiff also had to identify specific test preparation and identify appropriate tutoring/studying services that were most effective in working with her learning disabilities of ADHD and dyslexia.

17. There was a lengthy process required to request accommodations from the USMLE. USMLE states approximately **60 business days** to receive a decision for a request for test accommodations. https://www.usmle.org/what-to-know/test-accommodations

18. On Tuesday, April 18, 2023, Plaintiff duly applied for USMLE test accommodation. In fact, the USMLE did not even receive a response to her request for accommodations to take the Step 1 exam until July 12, 2023.

19. Plaintiff's reasonable accommodation request was denied for additional test time (time and half), a standard accommodation from one who has dyslexia. It is also a standard

accommodation for one who has ADHD. Thus, the fact that Plaintiff had the accommodation denied was shocking.

20. Instead USMLE only granted her lesser accommodations for question blocks and an additional break.

21. Around the time that Plaintiff received her accommodations back, she faced serious health challenges that required returning to her family's home in New Jersey—a challenging environment not conducive to academic success.

22. Despite these challenges, Plaintiff made her first attempt at the Step 1 exam on December 28, 2023.

23. When Plaintiff received the results of that exam, she promptly re-engaged with the USMLE accommodations process.

24. USMLE again denied her accommodation request for double time (her accommodations in place at URMC) but granted her only time and a half.

25. The accommodations also required an individual testing room, which complicated and delayed the possibility of scheduling an exam. After facing serious medical struggles that physically prevented Plaintiff from sitting for the exam in June 2024 as originally planned, she retook Step 1 in July 2024 –her second attempt at the exam.

26. URMC's Handbook permits students three attempts at the Step 1 exam and does not include any requirement that students have passed Step 1 to enter Phase 3.

27. However, on June 5, 2024, the MSPRB advised Plaintiff that it would not permit her to enter Phase 3 without passing Step 1—a requirement that does not comply with URMC

Policy. the Student Handbook, p. 69 (students "are required to take" Step 1 prior to Phase 3, but "passing" Step 1 is only "required for graduation"); p.70 (dismissal may be based on failure to pass Step 1 "after three attempts").

28. The June 5, 2024, letter further stated that she would be enrolled in a 3rd partial and final semester of IND999, and that it would only engage in dismissal "considerations"—not summary dismissal—if Plaintiff did not pass Step 1 by July 24, 2024.

29. URMC's Handbook expressly provides that students may enter Phase 3 and later attempt Step 1. Handbook, p.70 ("[A]ll students, regardless of whether they are in Phase 3,[…] must take USMLE Step 1 on or before December 1st").

30. Despite this policy, and despite the MSPRB's decision that Plaintiff would be enrolled in IND999 for the upcoming semester,  two months later, on August 9, 2024, the MSPRB summarily dismissed Plaintiff.

31. The MSPRB did not notify Plaintiff of that decision until August 9, 2024, but stated that communication dismissal would be effective August 5, 2024.

32. This effective dismissal date is contrary to both the Handbook, p. 63 (students "may continue to attend classes and clerkships through his/her/their appeal"); 139 ("The date of dismissal is the date when the last of any and all student requested appeals has upheld the dismissal"), and the communication of Dr. Nobay, who indicated that she would be considered a full-time student until such time as she had exhausted all appeals.

33. Therefore, URMC has deprived Plaintiff of her contractual right to continue her education pending the appeal process which has caused unnecessary delays in her academic progress.

The school has prevented Ms.Cooper from continuing her education, despite the handbook stating that students "may continue to attend classes and clerkships through his/her/their appeal." As a result, her academic progress has been unnecessarily delayed. Ms.Cooper had been left in a state of uncertainty regarding the school's support for retaking the exam and the status of the required documentation to register for Step 1 and request accommodations—both of which depend on school-issued paperwork. This lack of clarity has prolonged the process and placed her in a challenging position.

34. Further, MSPRB did not provide Plaintiff with the required notice that it would be reviewing her performance more broadly, and did not make the required efforts to contact Plaintiff to understand any mitigating or extenuating circumstances before rushing immediately to dismissal.

35. This contradicted its previous communication that Plaintiff would be enrolled for an additional semester. Handbook, p. 62 ("If a student's performance is to be reviewed by the MSPRB, his/her/their Advisory Dean will be notified by the Associate Dean for Student Affairs prior to the meeting of the MSPRB to allow time to contact the course/clerkship director and/or student to understand any mitigating or extenuating circumstances surrounding the performance concern.")

36. In that August 9, 2024, communication, the MSPRB stated that Plaintiff has not demonstrated sufficient academic progress to continue as a student, and cited "failure to pass the USMLE Step 1 by the extended date and other long-standing concerns including academic difficulties in Phase 1" as grounds for her dismissal.

37. URMC Policy Does Not Permit Dismissal for Vague, Unsupported Concerns About Academics.

38. URMC's Handbook provides limited grounds for dismissal, and the MSPRB's decision is not compliant with the requirements therein because the stated grounds for dismissal—failure to "demonstrate sufficient academic progress" and vague "long-standing concerns"—do not align with any of the Handbook provisions allowing dismissal.

39. Notably, these reasons are different from "deficient academic performance." See Handbook, p. 61 ("deficient" academic performance may lead to dismissal). Deficient academic performance requires notification and opportunities for remediation, and deficiencies are described in the Handbook as specific academic incidents which must follow particular processes, not a general term. Handbook, pp. 35-36 (requirements for notifying students of deficiencies and remediation).

40. The MSPRB's mandate is to understand and successfully remediate whatever academic concerns are brought to its attention.  Handbook, p. 61.

41. Summarily dismissing Plaintiff without notice or discussion on the basis of vague "concerns" does not align with this mandate and is arbitrary and capricious and also in Plaintiff's case discriminatory.

42. Even if either failure to "demonstrate sufficient academic progress" or vague "long-standing concerns" were permissible grounds for dismissal, neither is accurate.

43. As URMC was aware, Plaintiff's initial "academic difficulties in Phase 1" were related to an undiagnosed learning disability, which had since been diagnosed and for which she has

received accommodations.

44. Basing Plaintiff's dismissal on her academic progress during a time when she was working with an undiagnosed disability is discriminatory, and contrary to URMC policy.

45. Once accommodations were in place, Plaintiff quickly and successfully remediated. She did not develop "long-standing concerns;"

46. In fact, after the MSPRB reviewed Ms.Cooper statement for the MSPRB supported Ms.Cooper's progress to Phase 2 (second year) of medical school experience without repeating Phase 1. URMC faculty and the MSPRB consistently expressed that they were "impressed" with her work and her "continued success." and supported It was over a year after her remediation and her performance has been satisfactory. In the meeting, Plaintiff stated she may have a learning disability that she had discussed with faculty members and had an appointment set up for evaluation by a recommended source from URMC.

47. The MSPRB additionally cites Plaintiff's failure to pass USMLE Step 1 as grounds for her dismissal. Per the Step 1 policy, failure to pass Step 1 only merits dismissal when a student has made three attempts "on or before December 1st," or when the last day of the exam is December 1st. Handbook, pp. 69-70. The Handbook does not require students to pass Step 1 prior to Phase 3; instead, the Handbook expressly states that students in Phase 3 may still attempt the Step 1 exam. Handbook, p. 70 ("[A]ll students, regardless of whether they are in Phase 3,[...] must take USMLE Step 1 on or before December 1st")

48. Neither of these provisions allowing dismissal applies to Plaintiff: Plaintiff had not failed to pass Step 1 with the last date of exam being December 1st and had only two attempts at

the exam.

49. Dismissing Plaintiff at this point is a violation of URMC policy, and, particularly where the delays in exam-taking were due to her disability-related and thus a discriminatory deprivation of the opportunity afforded by all other students.

50. Following Plaintiff's appeal to the MedSAC Appeals Board (MAB), on September 16, 2024, the MAB issued a letter stating, "The MAB voted to affirm the MSPRB's dismissal recommendation." The letter contained no opinion or reasoning, despite Plaintiff's requests for additional information regarding the reason behind the denial of the appeal.

51. URMC representatives simply stated that MAB does not provide reasons, and that MAB simply affirms the MSPRB's rationale. This is directly contrary to the requirements of the Handbook that the MAB should "offer an independent opinion about the merits of the case," and further states, "The MAB will reconsider the entire case and arrive at its own decision."Handbook, p. 63.

52. Without information regarding the reason for the denial of the appeal, Plaintiff was deprived of the notice which Plaintiff was clearly due under the Handbook and which underlies a fair process. Even if the MSPRB's decision was permissible, the MAB's failure to follow URMC requirements to independently assess Plaintiff's case is a violation of URMC policy.

53. Moreover, Plaintiff described her plan for continued progress in detail in her appeal to the MAB, Because the MAB, contrary to URMC's policies, conducted no independent analysis and provided no reasoning for upholding her dismissal, Plaintiff did not have the

necessary notice of any perceived deficiencies in that plan that are due to her at this stage under URMC's Policy.

54. Plaintiff was initially denied, and a decision was rendered on November 15, 2025, and November 20, 2025. Defendant's final determination, denying Plaintiff's appeal and permitting her to withdraw was made on December 13, 2025.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. 794(A)**

55. Plaintiff realleges and incorporates by reference each of the preceding paragraphs.

56. Defendant discriminated and retaliated against Plaintiff by dismissing her from school, using pretext of Plaintiff was not making adequate academic progress through the curriculum and had two failed attempts to pass the United States Medical Licensing Examination- Step 1 thus permanently destroying Plaintiff's career prospect and earning.

57. Defendant receives federal funds and therefore subject to the requirement of the Rehabilitation Act.

58. Section 504 was violated because Plaintiff was an otherwise qualified individual with a disability and was excluded from participation and denied the benefits of and subjected to discrimination solely by reason of her disability and perceived disability.

As a result of the foregoing conduct, Defendant has violated. Section 504, 29 U.S.C. 794 and the regulations promulgated thereunder resulting in Plaintiff being damaged.

**AS AND FOR A SECOND CLAIM FOR RELIEF-ADA**

59. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

60. Defendant violated the Rehabilitation Act, 29 U.S.C. Section 704 a, and because of its discriminatory treatment of Plaintiff, Plaintiff suffered monetary damages that exceed the minimum jurisdiction of this Court plus attorney's fees.

61. Plaintiff is a protected individual within the meaning of the Americans with Disabilities Act 42 U.S.C. 12182.

62. Plaintiff has a disability within the meaning of the ADA.

63. Defendant is a statutory party within the meaning of the ADA.

64. Defendant violated the ADA by discriminating against her by dismissing her due to her disability and perceived disability.

65. As a result of the willful activities of Defendant, Plaintiff has been deprived of equal educational opportunities based upon her disability, and perceived disability discrimination in violation of the Americans with Disabilities Act 42 U.S.C. 12182.

66. As a result, Plaintiff has been damaged that exceeds the minimum jurisdiction of this Court.

**AS AND FOR A THIRD CLAIM FOR RELIEF-NYS EXECUTIVE LAW**

67. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

68. Defendant violated the New York State Human Rights Law by discriminating against Plaintiff by dismissing her due to her disability and perceived disability.

69. As a result of the foregoing, Defendant violated Executive Law § 296 by subjecting Plaintiff to a discrimination based on her disability, and perceived disability.

70. As a result of the Defendant violating the Executive Law Plaintiff has been damaged.

### AS AND FOR A FOURTH CLAIM FOR RELIEF-ARTICLE 78

71. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

72. At the time of enrollment, Plaintiff was provided by Defendant with Defendant's policies regarding academic criteria for graduation and the policies from the school as well as the appeal procedures in the event of an alleged breach of the agreement. This formed the contract between the Plaintiff and Defendant. The contract was based on the terms and conditions for graduation that was offered by the Defendant at the time of Plaintiff's enrollment. Implicit in the contract, is to apply the rules uniformly and not to act arbitrarily and capriciously and discriminatorily when applying the policies to a given situation.

73. Defendant by and through its agents breached the contract in the State of New York.

74. Plaintiff duly appealed her dismissal through the grievance procedure set forth in the student handbook.

75. As a result of the foregoing, Defendant breached the enrollment contract (an implied in fact contract between the parties) with Plaintiff, resulting in Plaintiff's dismissal and

76. Based on the foregoing Defendant breached the implied-in-fact contract and acted arbitrarily and capriciously and in bad faith by dismissing Plaintiff (forced withdrawal)

### PLAINTIFF DEMANDS A TRIAL BY JURY

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

   a. A declaration that the actions taken against the Plaintiff were arbitrary and capricious and discriminatory;

13

b.  Reinstatement to institution, with full privileges to continue their studies;

c.  Reimbursement for the tuition paid to Defendant, and related expenses,

d.  Special damages for a lost career as a result of not obtaining a Degree including the salary she would have earned if Plaintiff was conferred a degree;

e.  Emotional and psychological damages caused to the Plaintiff due to the conduct of Defendants;

f.  Damages caused to the Plaintiff due to the loss of continuity in learning because of the inappropriate dismissal from the program;

g.  Damages to her professional reputation, pain, suffering and emotional distress, in an amount to be determined at trial;

h.  Granting a permanent injunction enjoying Defendant, its officers, agents, servants, employee, attorneys, and all persons in active concert or participate with it, from discriminating against disabled students, including from discriminating against qualified individual with a disability when seeking reasonable accommodation for said qualified disability, or perceived disability in the school.

i.  Ordering Defendant to institute and carry out policies, practices, and programs which provide equal academic opportunities for disabled students, and which provide equal academic opportunities for qualified individuals with a disability, which eradicate the effects of its past and present unlawful academic practices.

j.  Ordering Defendants to pay punitive damages to punish Defendants for Defendants' intentional, premeditated and malignant conduct when they knowingly

14

discriminated and retaliated against Plaintiff.

k.  Costs and disbursements; and attorney's fees and such other and further relief as

the Court deems just and proper under the circumstances.

Dated: New York, New York                    Yours, etc.,
      April 9, 2025

                                        STEWART LEE KARLIN
                                        LAW GROUP, P.C.

                                        STEWART LEE KARLIN
                                        Attorneys for Plaintiff
                                        111 John Street, 22nd Floor
                                        New York, NY 10007
                                        (212) 792-9670

15